Robert Peck on behalf of Appellant Douglas Echols. When Spencer Lawton, as County Prosecutor, knowingly and falsely accused Douglas Echols of a serious crime, serious crimes, among the most heinous that we punish, and then knowingly and falsely claimed that Echols was under indictment for those crimes, he engaged in a serious abuse of government power and shredded Douglas Echols' constitutional rights while serving no legitimate government purpose. The prosecutor's actions continued a Kafkaesque journey that Echols suffered through, through the original prosecution for which he was exonerated and for which a no-lay prosecutor was entered by Mr. Lawton. Section 1983 exists to provide a cause of action against such an infringement of Echols' rights. Now we have alleged that there are three areas in which constitutional rights were violated here. A substitute due process violation, a First Amendment violation, and First Amendment retaliation violation. Now substantive due process prohibits conscious shocking government action, meaning behavior that falls, that fails to comport with traditional notions of fair play and decency, or interferes with those rights, fundamental rights, implicit in ordered liberty. It covers the right not to be injured by unlawful exercise of government power, and it shocks the conscience when the government conduct is intended to injure without justification of a legitimate government interest, or is used as an instrument of oppression. It exists when government authority demonstrates a deliberate indifference to the truth while speaking from a position of public trust. It includes within its reach conduct that falls at the extreme end of tort law, and as this court has said, exists as more than mere negligence. It was objectively unreasonable, and one way we know that it was objectively unreasonable is that it violates the rules of conduct that apply to prosecutors in Georgia, and it served no legitimate prosecutorial purpose. So what's your best case can you cite that would say that this fact situation shocks the conscience? I think I can look at Tinker, which this court called a close case, in which they found that the police officers when they lied to the individual in custody about being abandoned by her attorney, they said it was a close case, but it was justified, and the only reason it was justified was because it was in the service of trying to solve a bank robbery and murder. Here it had no prosecutorial purpose. By lying, and we know that under Johnson versus Mississippi, That doesn't have to have a prosecutorial purpose, does it? I mean, prosecutors would be entitled to go to the legislature, would they not, when someone's conviction has been vacated, and urge that they not be necessarily compensated for it willy-nilly, that that should require something different from what is required to vacate the conviction. But no prosecutorial purpose is there's a lie in the in the midst of it. Of course, a lot of what is said is not necessarily a lie, right? And the question is, does one lie in the mix of that kind of exercise of governmental authority? I don't even know how much of it's even governmental authority. What the prosecutor's doing is going to a legislator, it's almost in a citizen kind of capacity, saying, look, don't spend the taxpayer's money every time someone gets their conviction vacated. You would agree they can do that, right? We said in our reply brief that there would be no problem if that's all he did. Yeah, I understand. So if, you know, that's the context, and if one thing he says in that is a lie, that shocks the conscience? Well, this is not just any lie. This is a lie that says that he is under current indictment when you know that you yourself have entered the no-lay prosecration, and that you cannot then say this. And in fact, under Johnson v. Mississippi, the state, and he is a representative of the state, he's acting as a state actor, is obligated to acknowledge that he has got a presumption of innocence at that point. Why does the lie have to shock the conscience? Why? I throw you a softball. Let's suppose he goes to the legislature, and the whole pitch is a lie. The statute of limitations had run, he told the legislature he's still under indictment. He wasn't under indictment, had been null-proced, and couldn't be reinstated. So if he just plain lied, and it was in retaliation for exercising speech and petitioning the government, why does the lie have to amount to a substantive due process? Well, not only does it stigmatize Douglas Echols, but it also interferes with and impinges upon his right of petition. I understand that. All I'm saying is, why does the conduct itself have to be an independent constitutional violation? Oh, it doesn't, at that point. The fact is, if it shocks the conscience, that's sufficient by itself. Yeah, but we're mixing claims here, I think. And it's easy to do. So, I mean, you have a claim that's a substantive due process claim that you admit requires that the government's violate a fundamental right. But you have a different claim, a separate claim, that's a First Amendment retaliation claim, right? Well, you know, due process in this context, in the substantive due process context, like equal protection, takes on a different character when there's also a violation of the fundamental right. Are you in effect saying that if he retaliated against his exercise of his right of the First Amendment, just plain retaliated by lying, that that's not a claim? I'm saying that that is a claim under substantive due process, because it does shock the conscience. Well, the substantive claim is a First Amendment claim. And in terms of the First Amendment, it is a separate claim. The lie itself is not so much as the fact is of the interference with the right to petition. You understand what my question was? I thought I did, but perhaps I didn't. Somebody goes to the government and exercises rights of speech and petition. Right. And the government official counters that with lies in an effort to retaliate against the exercise. Is that a violation? Yes, it is. Well, then there's, why do you have to have shocking the conscience? What I'm saying is that we have both here. And shocking the conscience is one rubric under which this could be. Shocking the conscience is a claim by itself. Right. That's a substantive due process. Yes. Period. That means that he just simply lied to the legislature. Regardless of whether Echols was exercising substantive rights. But in addition, he was exercising substantive rights. And so there is a separate type of violation. There's three violations here, as I understand you're putting it. One is substantive due process simply by lying to the legislature. The second one is by retaliating against his exercising speech. And the third by retaliating against him for exercising by the petition. Well, it's not so much as retaliating on the petition right, but interfering with that right. Well, interfering with the right and the motivation is retaliation. I'll grant that. All right. So, but what I'm saying also the shocking conscience doesn't have anything to do with the last two. No, it doesn't. But the last two have something to do with substantive due process as well. Substantive due process is violated either by shocking the conscience conduct or by violating somebody's fundamental rights recognized by order of liberty. And so either way, just like, you know, equal protection takes into account fundamental rights and puts on a compelling interest test. Substantive due process also can do that as well. And so what we're saying is that both rights here were violated and that these were well-established rights, that the rights included the right of presumption of innocence, those rights against interference with his petition. This was an official smear that interfered with his ability to seek some sort of relief through the legislative process. And that, the case law makes clear, cannot be done. It makes clear that the reasonable prosecutor knows that his out-of-court remarks about somebody cannot bring oppression or opprobrium against them and cannot be false. He has an obligation of candor in those remarks. Those are standards imposed by Georgia rules of professional conduct. And we know that those kinds of rules help you define what the reasonable prosecutor should know in those situations. I see my time is up. I've reserved time for rebuttal. Mr. Stay. Thank you. Good morning and may it please the Court, I'm Ron Stay here for the Appellee Spencer Lawton. The trial court's dismissal of the amended complaint should be affirmed under circumstances of this case because neither substantive due process nor a First Amendment retaliation claim will recognize a falsehood, even a deliberate falsehood, a libel, as a constitutional claim. Historically, the courts have been a little reluctant to extend 1983 liability to mere libel. They're not arguing mere libel. They're arguing that it's a retaliation against his exercising substantive rights. That's correct, Your Honor. You don't need a plus, as I understand it. Well, Your Honor, correct. If they are arguing... But let's assume that you could infer from the complaint that he deliberately interfered with the exercise of right of petition and right of speech. Those are substantive rights. By fabricating the thing about he's under indictment and he did it for the purpose of interfering with countering the speech and he's right. Right. Yes, Your Honor. Let's talk about that. As I see it, if you infer that from the complaint, he's got a claim of a constitutional violation. Correct, Your Honor. Let's talk about that claim first, the retaliation claim under the First Amendment. So under the... As to which he would have no qualified immunity. As to retaliation, Your Honor, we do contend he would have qualified immunity for that claim. That may well be. But at any rate, I understand that's putting aside the shocking the conscience. My understanding is that's the claim, the two claims. Correct, Your Honor. Exactly. As Judge Pryor pointed out, the shocking the conscience relates to his a jury could find that he went to the legislature solely in retaliation is exercising his speech because of what he did. Does that make a case? Yes, Your Honor. The answer... Yes, it does? No. Yes, I've got your question. Why doesn't it make a case? He does not state a claim for retaliation because there are three prongs to a retaliation claim. There has to be a constitutionally conduct. There has to be retaliatory action sufficient to deter a person of reasonable firmness. And there has to be causation. In this case, that second element is missing. Retaliatory action sufficient to deter a person of reasonable firmness. You don't think what the prosecutor did would deter somebody from exercising those rights? It's not a sufficient chill. And this court has not had an opportunity yet to address a case such as this where the retaliatory action is merely speech, government speech, even defamatory or libelous speech and not action. So that's your that's your linchpin of your argument, not sufficient to create a chill? Correct, Your Honor. Exactly. Although it's not yet been addressed by this court, numerous other circuits, at least seven by our count, have addressed this issue. And they have found universally that where we are talking about a government official's own speech, there's got to be more than speech. There has to be threats, coercion or intimidation. Right. And that is what's necessary to find a sufficient chill for it to be actionable. So the government and this is it's a situation where the plaintiff, in fact, spoke to, advocated for his position with the legislature. That is exactly correct. He engaged in the free speech. He engaged in the petitioning. So the question is when when a government official opposes that, even with defamation, even with lies, the question is when does it when does that government speech rise to the level? And all the other circuits have said it has to either be coercion, threats or intimidation. That is exactly correct, Your Honor. So when you say that, my research shows a little different. I mean, there's the Fourth and the Second Circuit say that. But what about the Sixth and the Seventh Circuits? Well, Your Honor, we have I'm thinking there's a tyranny versus V.H. V.A.H.L.E. Valley, the Seventh Circuit, saying that, quote, defamation inflicts sufficient harm on its victims to count as First Amendment retaliation. And there's no requirement about this coercion. There may be a case from that circuit, Your Honor, but we have found the D.C. Circuit, the First, the Second, the Third, the Fourth, the Fifth and the Tenth all have case law along these lines. And I cite my own circuit, Maddox v. City of Forest Park, quote, analysis of retaliation claims under the First Amendment is distinct and the effect of public disclosure of damaging information about an individual may be enough to trigger constitutional protection. And again, there's no requirement about this coercion, threat and intimidation. Well, I'm not familiar with that case. And I will recognize that perhaps there may be some circuits that do not follow this reasoning. But I think the reason in any case in the Eleventh Circuit that's adopted one way or the other is an open question. Not that it's an open question in this circuit, Your Honor. However, I will cite as an example, I think, a very instructive case is the Colson v. Grohman case, which is a Fifth Circuit case that's cited in our briefing. In that case, a city council person basically had opposed a police chief's budget request and they kind of went to war. And the police chief retaliated against her speaking up against his budget request by making numerous false, unfounded and very public accusations of criminal conduct. Accusations that he knew categorically were completely false because he had presented them to the D.A. and the D.A. had crimes. Nonetheless, he put a memo in the public library for anyone to read saying, this city council person is guilty of crimes. The Fifth Circuit in that case held that even though that speech may have been libelous, defamatory, intentional, and that is a lot of the Mr. Eccles' contention here. His main area of distinction is, you know, these were intentional lies. These were intentional falsehoods. The Fifth Circuit held in that case, even though they were intentional, it still is not enough of a chill. Even though it's not protected First Amendment speech if it's libelous, it's still not enough of a chill for it to be actionable. What is it, your argument that because he was successful in exercising his rights that it can't be a chill? Our argument is not that he, because he was successful in exercising his rights. Do we look to see what the ordinary person would conclude from the conduct? He was able to exercise his rights. I know he was, but in terms of, it was retaliatory. Well, as alleged in the complaint. I mean, it was retaliatory. There's no question about that. As alleged in the complaint, yes. Just as a factual matter. It's not a factual matter, your Honor, because we look at whether it would deter a person of reasonable points. I understand. Not necessarily this person. Right. Any person. Any person. It's an objective inquiry. Well, that's my point. I have a question of whether you would cross this prosecutor on anything. Well, your Honor, in this particular case. Anything that had to do with his functioning of his office. Well, let's look at the facts of this, the alleged facts of this case, your Honor, in that objective reasonableness and reasonable firmness inquiry. That's my concern. Of course. That's whether what he did, as heinous as it was, and I can't think of anything worse in terms of whether or not that would send a message to average citizens who may have some interaction with the prosecutor's office. You better not say anything or do anything to cross this man or he's liable to clobber you in the press or someplace. Well, your Honor, you know, we will concede, you know, was the behavior as alleged model, honorable? No, it's not. I think it would deter people is what concerns me. Well, in this case, when we look at the facts as alleged, would it deter a person? No, because in this case, unlike a lot of these other cases where it was a simple allegation of criminal conduct in a complete vacuum without any backing information or any sub, you know, previous facts. No, no, no. He says he's under indictment right now. But that is an objectively disprovable fact. It's a public record. It is a public record that is easily disproven. And in fact, the legislature had that. In other words, if somebody could discern the lie, it doesn't become chilling. Not if someone can discern the lie, Your Honor. But in this case, if someone can, if someone can combat the lie. And in this case, it would have been very. Your point is that in the First Amendment context, if the alleged retaliation is speech. Correct. Then it does have to amount to something more than just a lie. That is correct, Your Honor. It has to be a threat, coercion, or intimidation, a threat of imposing government power. What about exercising his right of petition? Your Honor, two responses to that. First, that argument's been abandoned on appeal. It was not briefed. I don't believe that it was clearly and succinctly briefed. Do you think they've waived that claim? I do. Yes, I do, Your Honor. And secondly, if that is still a live argument, there's no way to state a claim for that because he did, in fact, petition. No, I understand that, but it could chill anybody from doing that sort of thing. Back to the retaliation argument. Two distinct First Amendment claims. My understanding is the brief has a retaliation argument for both First Amendment exercises. Right, it has a retaliation First Amendment argument and a substantive due process argument. Yeah, First Amendment is discreet. First Amendment, I was prevented from petitioning the government for the dress. My only question is whether or not there's a reasonable inference from the complaint, and I think there is, that anybody that crosses this prosecutor is going to be faced with hell to pay. Your Honor, there may be, you may be able to raise an inference there. Therefore, you better not exercise any of these First Amendment rights or you're in trouble. Well, I think the question, though, isn't whether or not the prosecutor communicating in this fashion could cause some kind of chill. The question is, is it enough of a chill for it to be actionable? There's a difference between there being some chill and it being an actionable chill. How much chill is chill? Well, what the cases are telling us is we need to draw a bright line, and we draw that at threats, coercion, and intimidation. The rationale for that... Let's make it clear. I want to make sure I understand this, okay? Because you don't really, you're not talking about this today except when I ask you, okay? Isn't the reason the courts have said that in those contexts, our sister circuits, and I counted the several circuits that you did, is that because what the retaliation is here is speech. Correct. And we've got to be careful in that context when the alleged retaliation itself is speech. It has to rise to something a little higher. It has to be threats, coercion, intimidation. It's not enough that it be defamatory or that it be false. That's what our sister circuits have said, right? Because it's speech. That is absolutely correct, Your Honor. And in fact, this court has recognized that line of case law in the Dixon v. Burke County case in a footnote. That was an equal protection case, but in a footnote it did say, and I'm quoting, an official's own First Amendment rights warrant consideration in a Section 1983 retaliation case where the official is being sued for speaking, which is exactly what we have here. And so, there is a balancing... There is an effect telling the legislature this man is going to trial under an indictment. I'm sorry, say that again. There is an effect telling the legislature he's going to trial under an indictment. That is correct, Your Honor. As alleged... As good as I can do it. Is that a threat? That's not a threat. That is not coercion or intimidation. It is simply a, you know, as alleged, it's a lie. It is a mistaken fact. It could be intimidating him from exercising his First Amendment rights. It could be, right, but that is the chill effect. But the question is not whether or not there is a chill effect. The question is whether or not are we attempting to impose liability for mere speech as opposed to speech... Hold on. Mere speech? Yes. It's not just mere speech. It's the effect of the speech. Say that again. It's the effect of the speech is what concerns me. Well, the cases will say that, you know, the effect of the speech, there may be an effect... I've seen prosecutors in a little while, and I'm experienced on the bench, who have scared the living hell out of a lot of people with speech and deterred them from exercising all sorts of rights. In other words, stay the way, stay away from this, this whole ambit of this prosecutor's office. That may be, that may be okay. Well, Your Honor, I... In other words, you get them out of office is the... You know, we will, I will concede that the speech itself may not have been advisable as alleged, and I will also concede that perhaps it did have some effect, but there's a difference between that and it being... The point here is this is a 1983 suit, right? Correct. He's being sued in his individual capacity, right? Yes. He has First Amendment rights too, right? Correct. And there's a lot of Supreme Court case law that says people have First Amendment rights to lie. That is correct. That is correct, and the cases we've cited... I agree with that. Yeah, the cases we've cited, Coulson v. Grohman, X-Men v. Pataki, Suarez Industries v. McGraw, those are all cases where the government agent was accused of basically lying, intentionally lying to destroy someone, to hurt them physically. Yep. And that is exactly what we have in this case, and in all of those cases, the Second, Fourth, and Fifth Circuits held that merely speech, even if it's a lie, even if it's an intentional lie... What if it's directed at the exercise of constitutional rights? That's what concerns me. That's what was happening in those cases. I agree with just pure libel or whatever it is. You have to have this plus or whatever it is. I'm out of time. You can answer the question. Oh, yeah. I think that, Your Honor, if the constitutionally protected activity was at stake in those cases, those were cases where they similarly were petitioning the government, and speech was issued against them, and they sought a retaliation claim. Thank you. Justice Pack. Your Honors, I'd like to start with the claim that was just made about we had waived our First Amendment claim. We certainly did not, and their brief made that accusation by saying that we insufficiently argue it. As we pointed out, what we argued against was not that we had failed to show that we were engaged in our petition rights. The district court accepted that. What they said was that... I don't see where there's really any difference, though, between the free speech and the petition claim. It seems to me that if one goes forward, the other goes forward. If one fails, the other fails. Am I wrong about that? No, I agree with that, but we clearly made the claim that what the district court got wrong... It seems to me much ado about nothing, then. I mean, because everyone agrees that the speech... What's your response to his argument that all the circuits say there's got to be coercion, intimidation, etc., and that pure speech is not an actionable 1983 claim? Even false speech. What all the circuits say is that you cannot deter... The question is whether you've deterred a person of ordinary firmness in the circumstances that we're talking about from exercising those rights. And so many of them use the shorthand of threats, intimidation, or coercion. Don't they do that? We say that's present here. Don't they do that, though, because what's at stake is that the defendant who is engaging in speech to... Right, and I think it's present here, and I will say why. Because here we have someone who was falsely prosecuted, spent seven years in prison. He gets out after the innocence project shows by DNA evidence that could not have been him. There's a no-lay prosecutor entered. He thinks he's fine. The legislature takes a bill to give him compensation for the problems that he thinks... And we know the facts. And the same prosecutor who entered the indictment. Now, we know that this prosecutor went ahead. Even after the DNA evidence was in, he refused to amend anything. He opposed the action that dismissed the charges against him. And we know that he had this apparent animus against Echols. So Echols now is in a situation where the prosecutor who has the ability to prosecute him again, even if it's improper, and that he'd have to get defense counsel and fight this again, and he had a bad experience already, feeling intimidated from pursuing any further rights. Because this guy, if he doesn't prosecute him on the old charges, could still prosecute him on new charges that are made up. Because, as we say in our brief quoting in the Chief Judge of New York, a prosecutor can indict a ham sandwich. So therefore, that question of threats and intimidation, all apparent. It's just when a mobster goes up to somebody and says, nice family you have there. He's not commenting on how nice your family is. He's basically making a threat. It doesn't have to be overt. So that's why it's there. Now, my friend mentioned the Dixon versus Burke County case. And there, it was pure opinion. This court found that there was no problem because all he did was express pure opinion. But we know that this wasn't pure opinion. This made an allegation about facts. And we know that when you make certain allegations about facts, it's not opinion anymore, as the Milkovich case in the United States Supreme Court teaches us. So this is not that situation. And this is a situation where it was designed to be threatening. It was put into the legislative process. And they were surprised. Yeah, that's why I asked earlier, asked your question. And I think the reasonable person of ordinary firmness would read it as a threat. And that's why we think... If we're looking at this just on a pleading standard, right? That's correct. And so the facts as pleaded must be taken as true and read like most favorable. And so what you're saying is that that's fairly read as threatening. That's exactly what I'm saying. It's rising to that standard that the other circuits adopted. That's correct. You would not disagree with our adoption of that standard. I think that the adoption of that standard does coincide with the ordinary firmness standard. I think it's a way of implementing... And it makes sense to do it in the context where what the defendant was engaged in was speech itself. Yes. And remember, of course, when we look at that question, we also look at the authority that the person has. For example, in Holloman, the case involving the student with the silent protest, where the principal verbally castigated him. We know that because it was the principal in this position of authority over that student, in the same way that a prosecutor over a potential defendant has that kind of authority. So for those reasons, we ask that the district court be reversed. Thank you, gentlemen. The court will stand adjourned under the usual order. Thank you.